State vs. Wright.

## No. 10,173.

## STATE OF LOUISIANA VS. GEORGE C. WRIGHT.

40  589
45 1308

40  589
51 1111

In criminal cases the cross-examination of a witness must be confined to the matters stated
by him in his direct examination, or closely connected therewith.

Where, in a prosecution for murder, it was proved that the accused went into the room
where the killing occurred with a drawn pistol, he (the accused) may be asked when on
the stand as a witness what his intention was at the time he entered the room.

Where, upon the trial, there was testimony to the effect that the killing was accidental, the
trial judge is not justified in refusing to charge the jury on the subject of accidental
killing, and of negligence or non-negligence connected therewith upon the ground that
he did not believe the evidence. State vs. Tucker, 38 Ann. 536, reaffirmed.

APPEAL from the Criminal District Court, Parish of Orleans.
Roman, J.

---

*M. J. Cunningham,* Attorney General, for the State.

On cross-examination a witness for the defense may be interrogated upon any question
incidental to the facts and circumstances testified to on his direct examination. 35 Ann.
1015 ; 36 Ann. 573.

*W. L. Evans* for Defendant and Appellant :

A witness called by defendant was cross-examined on matter not connected with the matter
stated in her direct examination ; notwithstanding the timely objection of defendant's
counsel. This was error. State vs. Swayzie, 30 Ann. 1327.

"A party, when examined as a witness, may be asked as to his motives or intentions, when
these are material." Whart. Cr. Ev., 8th Ed., § 431 and authorities there cited. Whart.
Cr, Ev., § 456.

"It is the judge's duty to charge the law applicable to any state of facts supported by
evidence, whether he believes or attaches value to such evidence or not." State vs.
Tucker. 38 Ann. 540, 791.

The sufficiency or insufficiency of the evidence is for the jury alone. State vs. White, 35
Ann. 97 ; State vs. Breckinbridge, 33 Ann. 312.

---

The opinion of the Court was delivered by

TODD, J.   The defendant appeals from a sentence of ten years' im-
prisonment at hard labor, imposed after conviction of manslaughter
on an indictment for murder.

The grounds upon which he rests his appeal are presented by sev-
eral bills of exception found in the record.

### I.

The first exception was taken to the ruling of the court permitting
the Attorney General to interrogate a witness for the defense, on his
cross-examination, touching a matter about which he had not been
asked nor testified in his direct examination.

We gather from the bill of exceptions and the reasons assigned by

the trial judge the following facts connected with the ruling complained of.

The witness, Mrs. Dehan, had testified, on her direct examination, that on the day the homicide occurred she was employed as a servant at the house wherein the killing took place; that in the house there was a bar-room; in the rear of the bar-room a hall, and in the rear of the hall a dining-room.

That she was standing at the door leading from the hall into the bar-room; that she saw the deceased open that door, cross the hall, knock three times at the dining-room door, which was opened to him by his sister, the wife of the accused.

That harsh words passed between the deceased and his sister; he abused her, and told her he had come for some pictures. That the accused, who was at breakfast, rose from his seat, asked the accused to be more guarded in his language towards his (accused's) wife, and sharp words were then exchanged between them.

That the wife of the accused then said to the deceased, "Stop that fuss and I will get the pictures." That she left the dining-room and went up stairs, leaving the parties in the dining-room. From there she passed into the yard, and on her return to the hall she saw the accused going to the bar-room with a pistol in his hand.

There the direct examination stopped. On the cross-examination she was asked, substantially, to state what occurred then in the bar-room between the accused and the deceased—whether she heard the report of a pistol, and who fired it.

Thereupon counsel for the accused objected to the questions, his objection being (quoting):

"That the State attorney has no right to cross-examine any witness for the defendant except as to facts and circumstances connected with the matters stated in the direct examination."

The objection was overruled and the answers of the witness admitted, for reasons assigned by the judge, to the effect that the questions and answers of the witness were closely connected with the facts stated on her direct examination, and, "further, that the ends of justice would be subserved by allowing the witness to state fully all she knew in relation to the case."

It is an elementary principle of the criminal law, and one often recognized in our jurisprudence, that a witness can only be cross-examined on the subject matter of his examination in chief, or on something closely connected therewith, or, as stated by Greenlief:

"The rule is now considered by the Supreme Court of the United

States, to be well established, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters *stated* in his direct examination."

This dictum, though not now applicable to civil cases, still rules in criminal cases. Roscoe, Crim. Ev. 173; Archibald, Crim. Pleadings, 157; State vs. Lacombe, 12 Ann. 196; State vs. Denis, 19 Ann. 119; State vs. Swayzie, 1323.

One of the reasons assigned by the trial judge for his ruling admitting the evidence was (quoting): "That the ends of justise could be best subserved by allowing the witness to state fully all she knew in relation to the case before us." An apt reply to this is to be found in the decisions cited above, 19 Ann. 119, from which we quote:

"The discretion which is claimed for courts to relax, to change or to utterly disregard the rules of criminal evidence which the Legislature has decreed obligatory, would effectually make the law a dead letter. Cases might occur wherein a relaxation of the rule might serve to advance the course of justice, but this is no reason why the general rules of evidence should not be observed, and until the law of evidence in criminal proceedings is changed, our courts are not justified in disregarding rules of evidence. It was well said by Lord Kenyon that "Rules of evidence are of vast importance to all orders and degrees of men, and that our lives, our liberty and our property are concerned in support of them."

The only remaining question on this point is whether the questions to the witness, allowed by the judge, are obnoxious to this rule—in other words, were they closely "connected with the facts *stated* in the direct examination," which is the test of their admissibility under the rule quoted.

We note that the witness in the direct examination testified exclusively to what occurred before the killing, in the hall and dining-room, to-wit:

That the deceased came from the bar-room into the hall, passed through the hall, knocked at the door of the dining-room, abused his sister, who opened the door for him, was remonstrated with by the accused, and after sharp words had passed, and after she had left the hall a moment, and returned to it, saw the accused with a pistol going into the bar-room. Not a word was she asked as to what passed in the bar-room, or about any conflict or struggle between the parties or about the firing of a pistol or anything, in short, about the killing.

The vital points in the prosecution were, of course, the fact of the killing and shooting, and the person who did it. These vital facts

upon which the witness and the defendant's attorney had been wholly silent, the State's counsel attempted to prove by her—i. e., to establish the crime charged against the prisoner by the cross-examination of his own witness, who had not uttered a word about the commission of the deed. This was utterly unwarranted. It was giving a latitude to a cross-examination which the law does not tolerate.

## II.

The accused, sworn as a witness in his own behalf, was asked "what his intention was at the time he entered the bar-room," where the killing took place.

The question was objected to substantially on the ground that it was not competent for the accused to show his intention at that time, and that he had stated his intention, or the intention actuating him, at the moment the firing took place. The objection was sustained and the witness not permitted to answer.

It had been shown by the the testimony of a previous witness that the accused had crossed the hall and entered the door of the bar-room with a pistol in his hand. Of course, therefore, the inquiry as to intention actuating the accused when he entered that room where the shot was fired and the killing done, was a vital one. In truth, the intent is the very essence of the offense. Before an accused was made a competent witness, the intent was left to be inferred from acts committed and proved, but the intent—the actual intent—with which an act is done is no less a fact than the act itself, but he alone who commits it, knows and can tell the intent with which it was committed. When an accused was made a competent witness his competency was as unrestricted as that of any other witness, and we know of no law or legal principle that would debar an accused from testifying to his intent or motive, where such intent or motive was material and altogether a proper subject of enquiry.

It frequently becomes important in criminal trials to ascertain the state of feeling—the partiality or prejudice of a witness—and the usual way of ascertaining this is by direct inquiry to the witness and his answer to such inquiry. This course is just as free from objection when applied to the accused as a witness. The judge, therefore, was in error in refusing to permit the question to be answered. Wharton, Crim. Ev., 8th Ed., Sec. 431.

## III.

The counsel for the accused asked the court to give the jury several special charges concerning the right of self-defense. This the

court refused to do, one of the reasons for such refusal being that in his written charge to the jury he had already charged the jury substantially to the same effect as asked in the special charges requested.

From an examination of the record we are satisfied the reason of the judge's refusal to give the special charges requested was well founded.

### IV.

Another charge was asked, couched in the words following:

" A person who unintentionally and non-negligently, when doing a lawful act, kills another is to be acquitted."

This is a correct enunciation of the law. Wharton on Homicide, Sec. 470.

The trial judge, however, refused to give it because it was inapplicable under the real facts of the case.

In the assigning of the reasons for his refusal to so change, he states that there was evidence adduced at the trial that the accused "had not discharged the pistol at the deceased, but that it had gone off by accident and unintentionally," but that he (judge) did not believe it.

If there was such evidence, and whether the judge believed it or not, under the rule laid down by the present court in the case of State vs. Tucker, 38 Ann. 536, 791, the refusal to give the charge was error.

These conclusions reached upon the several questions above presented compelled us to remand the case.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the sentence thereon appealed from be annulled and set aside and the case be remanded to the lower court to be proceeded with according to law.